WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Erma E. Klinger, aka Erma Klinger, <br><br> Plaintiff, <br><br> v. <br><br> Carolyn W. Colvin, Commissioner of Social Security,[1] <br><br> Defendant. | No. CV-12-01997-PHX-GMS <br><br> **ORDER** |

Pending before the Court is the appeal of Plaintiff Erma E. Klinger, which challenges the Social Security Administration's decision to deny benefits. (Doc. 14.) For the reasons set forth below, the Court vacates that decision.

**BACKGROUND**

On August 21, 2009, Klinger applied for disability insurance benefits, alleging a disability onset date of August 11, 2008. (R. at 11.) Klinger subsequently amended the onset date to October 1, 2010. (*Id.*) Klinger's date last insured ("DLI") for disability insurance benefits, and thus the date on or before which she must have been disabled, is December 31, 2013. (*Id.* at 13.) Klinger's claim was denied both initially and upon reconsideration. (*Id.* at 11.) Klinger then appealed to an Administrative Law Judge

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant in this suit.

("ALJ"). (*Id.*) The ALJ conducted a hearing on the matter in Phoenix, Arizona on July 26, 2011. (*Id.*)

In evaluating whether Klinger was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[2] (*Id.* at 12–13.) At step one, the ALJ determined that Klinger had not engaged in substantial gainful activity since the alleged onset date. (*Id.* at 13.) At step two, the ALJ determined that Klinger suffered from the severe impairments of mild anterior lumbar spurring and mild AC joint degenerative joint disease. (*Id.*) At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments. (*Id.* at 14.)

At that point, the ALJ made a determination of Klinger's residual functional capacity ("RFC"),[3] concluding that Klinger could perform light work as

---

[2] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income).  Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations.  If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past.  Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy.  This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal citations and quotations omitted).

[3] RFC is the most a claimant can do despite the limitations caused by his

- 2 -

defined in 20 C.F.R. § 404.1567(b) except for the following limitations: Klinger is capable of lifting no more than fifteen to twenty pounds occasionally and is permitted to exercise a sit/stand option at will with customary breaks during an eight-hour workday. (*Id.*) The ALJ thus determined at step four that Klinger retained the RFC to perform her past relevant work as a fast food worker and restaurant manager. (*Id.* at 16.) The ALJ therefore did not reach step five. (*Id.*) Given this analysis, the ALJ concluded that Klinger was not disabled. (*Id.* at 17.)

The Appeals Council declined to review the decision. (*Id.* at 1.) The Council accepted the ALJ's statements of the law, the issues in the case, and the evidentiary facts, as well as the ALJ's findings and ultimate conclusions regarding whether Klinger was disabled. (*Id.*) The Council thereupon agreed that Klinger was not disabled. (*Id.*)

Klinger filed the complaint underlying this action on September 19, 2012, seeking this Court's review of the ALJ's denial of benefits.[4] (Doc. 1.) The matter is now fully briefed before this Court. (Docs. 14, 16, 17.)

**DISCUSSION**

**I.   Standard of Review**

A reviewing federal court will address only the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

---

impairments. *See* S.S.R. 96-8p (July 2, 1996).

[4] Klinger was authorized to file this action by 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .").

However, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

Harmless errors in the ALJ's decision do not warrant reversal. *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1055–56 (9th Cir. 2006). Errors are harmless if they are "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). Thus, for example, an error is harmless if the record shows that "the ALJ would have reached the same result absent the error" or "it was clear [the errors] did not alter the ALJ's decision." *Id.* "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders,* 556 U.S. 396, 409 (2009).

**II.   Analysis**

Klinger argues that the ALJ erred by: (A) improperly rejecting Klinger's treating physician's opinion, (B) misinterpreting evidence to Klinger's detriment, (C) failing to fully and fairly develop the record, and (D) improperly rejecting Klinger's credibility. (Doc. 14 at 2.)  The Court will address each argument in turn.

**A.   Rejecting Treating Physician Opinion**

"The medical opinion of a claimant's treating physician is entitled to special weight." *Walter v. Astrue*, No. CV-09-1016-PHX-GMS, 2010 WL 1511666 at *7 (D. Ariz. Apr. 15, 2010) (citing *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989)) (internal quotations omitted). This is because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Andrews*

1    *v. Shalala*, 53 F.3d 1035, 1040–41 (9th Cir. 1995). However, "the opinion of the treating
2    physician is not necessarily conclusive as to either the physical condition or the ultimate
3    issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.
4    1999). If medical evidence conflicts, it is the ALJ's job to "determine credibility and
5    resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). If the ALJ
6    chooses to reject the controverted opinion of a treating physician, she must make
7    "findings setting forth specific, legitimate reasons for doing so that are based on
8    substantial evidence in the record." *Id.*

9    If the treating physician's opinion is supported by the record and not inconsistent
10   with other evidence, it is accorded controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631
11   (9th Cir. 2007). However, "[w]here the opinion of the claimant's treating physician is
12   contradicted, and the opinion of a nontreating source is based on independent clinical
13   findings that differ from those of the treating physician, the opinion of the nontreating
14   source may itself be substantial evidence; it is then solely the province of the ALJ to
15   resolve the conflict." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

16   Dr. J. Porter, one of Klinger's treating physicians, completed a medical assessment
17   of Klinger's ability to do work-related activities on February 17, 2011. (R. at 300.) In it,
18   he opined that Klinger could sit and stand for continuous periods of only thirty minutes at
19   a time. (*Id.*) He further opined that Klinger at most could sit for a total of four hours and
20   stand for a total of three hours in an eight-hour workday. (*Id.*) He found that Klinger
21   could never stoop, squat, crawl, or climb, and that she could only occasionally reach, lift
22   up to ten pounds, and carry up to ten pounds. (*Id.* at 300–01.) He concluded that
23   Klinger's impairments could reasonably be expected to result from a medically
24   determinable impairment. (*Id.* at 302.)

25   The ALJ took Dr. Porter's opinion to mean that Klinger is only capable of
26   sedentary, part-time work. (*Id.* at 16.) However, the ALJ afforded little weight to Dr.
27   Porter's opinion. The ALJ gave three reasons for rejecting that opinion: (1) it was
28   inconsistent with Klinger's own reports of her daily activities, (2) it was inconsistent with

1   "[o]bjective findings and diagnostic studies, and (3) it was contradicted by Dr. Porter's
2   own treatment notes. (*Id.*)

3         The ALJ first discussed Klinger's self-reported daily activities. (*Id.* at 15.) He
4   noted that she attended college courses online, vacuumed, dusted, did housework, cared
5   for five dogs, and maintained a household alone. (*Id.*) The evidence of Klinger's daily
6   activities shows that in fact her ability to maintain her household by herself was severely
7   limited. In November 2009 she reported that while she could do housework like
8   vacuuming, laundry, yard work, and caring for pets, these activities took much longer for
9   her than the average person, and she had to take frequent breaks. (*Id.* at 184.) For
10  example, she reported that it took her two days to complete the task of vacuuming. (*Id.*)
11  By March 2010, she could only do fifteen to twenty minutes of household chores a day,
12  each chore taking about a month to complete. (*Id.* at 198.)

13        However, Klinger also testified at the hearing that she was taking online courses
14  part-time. (*Id.* at 32.) She stated that she spent six hours a day on the computer doing her
15  coursework. (*Id.* at 45.) Though Klinger testified that she had to take constant breaks
16  while completing coursework, her testimony contradicts Dr. Porter's assessment that she
17  could only sit for a maximum of four hours a day. Thus, the ALJ's decision to reject Dr.
18  Porter's opinion for being inconsistent with Klinger's daily activities was supported by
19  substantial evidence on this ground.

20        The ALJ also discussed the findings of an examining physician and two non-
21  examining physicians. (*Id.* at 15–16.) The examining physician, Dr. Cunningham, saw
22  Klinger on December 31, 2009. (*Id.* at 228.)  He noted that while Klinger exhibited "very
23  high pain behavior," there was "no evidence of traumatic injury" in her ankle. (*Id.* at
24  229.) He also noted normal movement in Klinger's shoulders and a "preserved range of
25  motion" in her ankle. (*Id.*) Dr. Cunningham opined that Klinger's conditions would not
26  impose any limitations for twelve continuous months. (*Id.* at 230.) Dr. Disney, a
27  physician who reviewed Dr. Cunningham's report, affirmed Dr. Cunningham's opinion
28  and stated that the evidence tended to show that Klinger was capable of work. (*Id.* at

240.) A similar opinion was issued by Dr. Griffith, a physician who reviewed Klinger's medical record. (*Id.* at 57–64.)

Thus, Dr. Porter's opinion was contradicted by Dr. Cunningham's opinion and not entitled to controlling weight. Dr. Cunningham performed an independent physical exam on Klinger and determined that she would not be impaired for twelve continuous months. The ALJ could reasonably conclude that this opinion contradicted Dr. Porter's findings that Klinger was substantially limited in her ability to do work-related activities. In addition, the weight of Dr. Cunningham's opinion is bolstered by the affirmations of the two reviewing physicians. Thus, the ALJ's decision to reject Dr. Porter's opinion was supported by substantial evidence.

### B. Misinterpreting Evidence

Klinger contends that the ALJ misinterpreted the evidence in the record by relying primarily on evidence prior to mid-2010 and by failing to properly address Klinger's complex regional pain syndrome. (Doc. 14 at 6.)

Klinger states generally that it is doubtful whether the ALJ reviewed all the relevant medical records because the ALJ used terms like "normal, stable, etc." that are "primarily found in the records prior to mid-2010." (*Id.* at 6.) This is not a persuasive argument that the ALJ did not review the complete record. In the absence of convincing evidence to the contrary, the Court assumes that the ALJ performed his duty of reviewing the entire record. The fact that the ALJ relied primarily on evidence from an isolated time period does not indicate to this Court that the ALJ neglected this duty, and as such is not a ground for reversing the ALJ's decision.

Klinger also appears to contend that the ALJ erred in failing to find that Klinger's complex regional pain syndrome was a severe impairment. An ALJ may "find an impairment not severe 'only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Wick v. Barnhart*, 173 F. App'x 597, 600 (9th Cir. 2006) (quoting *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005)). Here, the ALJ did not discuss Klinger's complex regional pain syndrome in

evaluating Klinger's impairments at step two. (R. at 13–14.) As discussed above, the evidence indicates that Klinger's condition was a "permanent impairment" that would impact "pain mobility and function [o]f the left leg." (*Id.* at 399.) The evidence does not establish that the chronic regional pain syndrome is "a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Wick*, 173 F.3d at 600. As such, the ALJ erred in ignoring Klinger's pain syndrome when evaluating her impairments at step two of the disability determination. In addition, the ALJ is required to consider both severe and non-severe impairments in making the RFC determination. 20 CFR § 404.1545(a)(2). Here, the ALJ did not mention Klinger's complex regional pain syndrome at all in determining the RFC. Thus, the ALJ also erred at step four of the disability determination.

The Commissioner again argues that any error made by the ALJ was harmless because the limitations caused by Klinger's complex regional pain syndrome are not entirely inconsistent with the ALJ's RFC assessment. (Doc. 16 at 14.) However, Social Security guidelines indicate that an individual who "is able to sit for a time, but then must get up and stand or walk for a while before returning to sitting . . . is not functionally capable of doing . . . the prolonged standing or walking contemplated for most light work." SSR 83–12; *see also Aukland v. Massanari*, 257 F.3d 1033, 1035–36 (9th Cir. 2001). Thus, the ALJ's conclusion that Klinger could do light work while requiring an at-will sit/stand is not consistent with Social Security rulings regarding the nature of light work. It is not clear that the ALJ would have reached the same conclusion even if he had not erred by failing to discuss Klinger's complex regional pain syndrome. As such, this error warrants vacating the nondisability determination.

### C. Failure to Fairly and Fully Develop Record

The ALJ has "an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)) (internal citation omitted). However, the ALJ is required to develop the record and

conduct further inquiry only "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001).

Klinger contends that the ALJ erred in failing to pose a hypothetical to the vocational expert ("VE") based on the RFC finding that the ALJ ultimately reached. At the hearing, the ALJ only relied on the VE to determine the skill level associated with Klinger's past work. (R. at 36–37.) Klinger argues that the ALJ should have posed a hypothetical to the VE that incorporated the ALJ's RFC determination, namely, whether a job existed that allowed for light work with an at-will sit/stand option given Klinger's age and occupational skill. (*Id.* at 7–8.)

However, the testimony of a VE is not required until the burden of proof shifts to the Commissioner to show that there are jobs in the national economy that the claimant is capable of performing. *Matthews v. Shalala*, 10 F.3d 678, 381 (9th Cir. 1993). That burden does not shift until step five, after the claimant has demonstrated that she is unable to perform any of the work she has done in the past. *Hoopai*, 499 F.3d at 1074. Until the burden shifts, the VE's testimony is "useful, but not required," and any error in a hypothetical posed to the VE is harmless. *Matthews*, 10 F.3d at 681.

Here, the ALJ did not reach step five because he found that Klinger had not met her burden at step four and was capable of performing her past work. (R. at 16–17.) However, as discussed above, the ALJ erred in reaching this conclusion. Thus, the Court cannot at this stage rule on whether the ALJ erred in failing to pose a hypothetical to the VE, as the decision-making process that would have led to the hypothetical was flawed. The Court declines to determine at this time whether this was an error that warrants reversal of the ALJ's decision.

### D.     Rejecting Klinger's Credibility

The ALJ must engage in a two-step analysis in determining whether a claimant's testimony regarding her subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). The ALJ must first "determine whether the

claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. If she has, and the ALJ has found no evidence of malingering, then the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.*

The Commissioner claims that the appropriate standard for the ALJ in rejecting claimant testimony requires only that the findings of fact be supported by substantial evidence. (Doc. 16 at 8–9.) She relies on *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991) (en banc), where the Ninth Circuit set out to "determine the appropriate standard for evaluating subjective complaints of pain in Social Security disability cases." (*Id.* (citing *Bunnell*, 947 F.2d at 342).) The *Bunnell* Court opined that once there has been objective medical evidence of an underlying impairment, the ALJ must make specific findings, supported by the record, for why he rejected the claimant's testimony on the severity of the pain. 947 F.2d at 345–46. This is to ensure that the ALJ "did not 'arbitrarily discredit a claimant's testimony regarding pain.'" *Id.* (quoting *Elam v. R.R. Retirement Bd.*, 921 F.2d 1210, 1215 (9th Cir. 1991)). Thus, the Commissioner claims that the standard governing credibility is a specific finding standard, which she claims is more in line with the overall "substantial evidence" standard that governs these cases.

Many panels of the Ninth Circuit have subsequently held, however, that if there is objective medical evidence of an underlying impairment, "and there is no evidence of malingering, then the ALJ must give 'specific, clear and convincing reasons' in order to reject the claimant's testimony about the severity of the symptoms." *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)); *see also, e.g.*, *Lingenfelter*, 504 F.3d at 1036. *Bunnell*'s language regarding "sufficiently specific" evidence articulated a general standard for dealing with claimant testimony. Subsequent decisions have addressed a subset of cases where there is no evidence of claimant malingering, and have articulated a "clear and convincing" standard for those situations. Thus, the Court will apply that standard to the ALJ's determination.

1    Here, the ALJ found at the first step that Klinger's "medically determinable
2    impairments could reasonably be expected to cause the alleged symptoms." (R. at 14.)
3    However, the ALJ rejected her statements concerning "the intensity, persistence and
4    limiting effects of [her] symptoms" as "not credible to the extent they are inconsistent
5    with the . . . residual functional capacity assessment." (*Id.* at 15.) The ALJ relies on
6    objective findings in the record and evidence of Klinger's daily activities as support for
7    finding Klinger's testimony incredible. (*Id.* at 15–16.)

8    However, once a claimant produces evidence that she suffers from infirmities that
9    could cause pain, she need not present medical evidence to support the severity of the
10   pain. *Chavez v. Dep't of Health and Human Serv.*, 103 F.3d 849, 853 (9th Cir. 1996). An
11   ALJ may not discredit a claimant's testimony for lack of objective medical evidence
12   "regarding the severity of subjective symptoms from which [s]he suffers, particularly
13   pain." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). Rather, the ALJ can
14   reject the claimant's credibility for other reasons, including "claimant's reputation for
15   truthfulness, inconsistencies either in claimant's testimony or between his testimony and
16   his conduct, unexplained or inadequately explained failure to seek treatment or to follow
17   a prescribed course of treatment, claimant's daily activities, claimant's work record, and
18   the compatibility of claimant's testimony with the medical evidence." *Jones-Reitan v.*
19   *Colvin*, No. CV12-1145-PHX-DGC, 2013 WL 1352065 at *5 (D. Ariz. Apr. 2, 2013)
20   (citing *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002); *Lee v. Astrue*, 472
21   Fed. App'x 553, 555 (9th Cir. 2012)).

22   Here, the ALJ cited "medical evidence of record" that Klinger's condition was
23   "normal" and "unremarkable" as evidence that her "impairments are not as severe or as
24   limiting as alleged." (*Id.* at 15.) He also relied on evidence that X-rays and other records
25   indicated a lack of musculoskeletal defects to support the severity of Klinger's
26   impairments. By itself, the ALJ's reliance on evidence that does not, in the ALJ's
27   opinion, adequately support the severity of Klinger's impairments is not a valid clear and
28   convincing reason for rejecting her testimony. The ALJ already found that Klinger's

1  symptoms could be caused by her impairments; thus, lack of medical evidence to support
2  the intensity of those symptoms is not a valid ground for rejecting her credibility. *See*
3  *Light*, 119 F.3d at 792. Instead, the ALJ must set forth other reasons for finding Klinger's
4  testimony incredible.

5        The ALJ also cited Klinger's daily activities and college attendance as evidence
6  that undermined her subjective symptom testimony. However, as discussed above, the
7  record shows that Klinger was seriously limited in her ability to do such activities, as she
8  had to take frequent breaks and it took her much longer to complete discrete tasks than it
9  would for a person without impairments. (*Id.* at 45, 198.) "[T]he mere fact that a plaintiff
10 has carried on certain daily activities does not in any way detract from her credibility as
11 to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting
12 *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001)). To warrant an adverse
13 credibility determination, the ALJ "must make specific findings relating to the daily
14 activities and their transferability" to a work setting. *Id.* (internal quotations omitted).
15 Here, the ALJ made no findings as to the transferability of Klinger's skills. He found it
16 significant that Klinger "expressed a goal to work with animation and art and freelance
17 from home," which showed "her belief in her own physicality and capabilities." (*Id.* at
18 15.) However, the Ninth Circuit has held that claimants "should not be penalized for
19 attempting to lead normal lives in the face of their limitations." *See Reddick v. Chater*,
20 157 F.3d 715, 722 (9th Cir. 1998). Similarly, this Court is reluctant to penalize Klinger
21 for having faith in her own ability to return to work in the future. Because the ALJ failed
22 to make specific findings as to the transferability of Klinger's daily activities to a work
23 setting, this is not a sufficient reason for rejecting her credibility.

24       The Commissioner argues that the ALJ's decision should be affirmed because "the
25 record before the ALJ showed that [Klinger] was able to walk a half mile, even though
26 she testified that she could only walk half of a block." (Doc. 16 at 10.) Thus, the
27 Commissioner asserts, the ALJ was justified in finding Klinger not credible. However,
28 this reasoning did not appear in the ALJ's decision. In reviewing an ALJ's decision, a

district court must rely on "the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray*, 554 F.3d at 1225.

Neither of the grounds on which the ALJ relies constitute clear and convincing reasons for discrediting Klinger's symptom testimony. Thus, the ALJ erred in rejecting that testimony. Klinger testified at the hearing that she suffered from "moderately severe" pain that was constantly present and exacerbated by increased activity. (R. at 40.) She further testified that she had difficulty standing and walking, and that her medications caused fatigue that required her to lay down at least once a day. (*Id.* at 40–41.) These symptoms would impair a person's ability to work a normal forty-hour work week. The Court thus cannot find that the ALJ would have reached the same result even if he had not erred by rejecting Klinger's testimony. Because the error is not harmless, it warrants reversal of the ALJ's decision.

## III.    Remedy

Having decided to vacate the ALJ's decision, the Court has the discretion to remand the case either for further proceedings or for an award of benefits. *See Reddick*, 157 F.3d at 728. The rule in this Circuit is that the Court should:

> credit[] evidence and remand[] for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting [certain] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.

Here, the ALJ erred in failing to discuss Klinger's complex regional pain syndrome in either step two or step four of the disability determination. He also failed to provide legally sufficient reasons for rejecting Klinger's subjective symptom testimony. However, it is not clear that the ALJ would be required to find Klinger disabled if such evidence were credited. In failing to discuss Klinger's complex regional pain syndrome, the ALJ concluded his analysis at step four and did not reach step five. As such, even if

the evidence in the record mandated a finding that Klinger is not able to perform her past work, it is unclear whether there might be other jobs in the national economy that Klinger could perform.

Thus, it is not "clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Smolen*, 80 F.3d at 1292. Under these circumstances, the Court will remand for further proceedings.

## CONCLUSION

The ALJ erred in rejecting Klinger's subjective complaint testimony and in failing to discuss Klinger's complex regional pain syndrome. The errors were not harmless and thus warrant a reversal of the ALJ's decision. However, because the record is unclear on the ultimate issue of disability, the Court remands for further proceedings rather than an award of benefits.

**IT IS THEREFORE ORDERED** that the ALJ's decision is **VACATED**.

**IT IS FURTHER ORDERED** that this case is **REMANDED** for further proceedings.

Dated this 13th day of June, 2013.

G. Murray Snow
United States District Judge